## BEVERIDGE v. CRAWFORD COTTON MILLS et al.

(District Court, N. D. Georgia.   May 12, 1919.)

### No. 38.

1. **EQUITY** �köz149—MULTIFARIOUS BILL—JOINDER OF COMPLAINANTS.

Bill against a cotton mill company and individuals for specific performance of agreement between plaintiff and defendant individuals, whereby plaintiff, on account of his experience in weaving, should become largely interested in the mill company, etc., *held* multifarious; the causes of action against the defendant individuals being intermingled with whatever cause of action there was against the mill company.

2. **SPECIFIC PERFORMANCE** ⊂128(1)—BILL FOR SPECIFIC PERFORMANCE AND DAMAGES—RIGHT TO MAINTAIN.

Plaintiff cannot maintain a bill for specific performance of a contract between him, defendant individuals, and a cotton mill company, whereby, on account of his experience in weaving, he should become largely interested in the company without subscribing for stock, where such bill in the alternative seeks judgment against the individual defendants for the sum of $50,000; it being impossible under the facts to decree specific performance, while any right to damages exists at law.

3. **SPECIFIC PERFORMANCE** ⊂114(1)—PROMOTION OF MILL COMPANY—PLEADING.

Bill alleging agreement between plaintiff, the individual defendants, and a cotton mill company, whereby, by reason of plaintiff's experience as a man familiar and expert in weaving, he was to become interested largely in the mill company without subscribing for stock, the bill praying separately for specific performance or money judgment against the individual defendants, *held* not to allege facts justifying any interference by a court of equity at all.

In Equity. Suit by George Beveridge against the Crawford Cotton Mills and others. On motion to dismiss the bill. Motion sustained, and decree directed to be taken.

W. W. Mundy, of Cedartown, Ga., and Moore & Pomeroy and Chas. E. Cotterill, all of Atlanta, Ga., for petitioner.

Richard B. Russell, of Winder, Ga., for defendants.

NEWMAN, District Judge. This is a suit, alleged to involve an amount in excess of the jurisdictional amount of $3,000, brought by the plaintiff, a citizen and subject of Great Britain, against the defendants, all being citizens and residents of the state of Georgia and of this district. The allegations of the bill are as follows:

That petitioner is an expert in the weave and finish of textile fabrics, duck, etc., and that prior to April, 1917, he, with other associates, had established and had in operation, at Cedartown, Ga., a large dyeing and finishing plant, under the name of Noble-Beveridge Company, and a plant for the manufacture of duck, known as the Cook Duck Mills.

That petitioner, being desirous of finding other plants engaged in, or to be easily converted as to become engaged in, the manufacture of duck, both for the purpose of supplying the said Noble-Beveridge Company with sufficient material to keep it in operation and for the

⊂For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

additional profits that might be earned thereby, and learning of a small manufacturing plant, known as the White City Manufacturing Company, owned and operated by J. W. Ingle, that might be purchased, he visited Mr. Ingle, at Athens, Ga., and looked over his plant.

That as a result of their interview the petitioner and J. W. Ingle agreed and contracted to form a corporation to take over the plant of the said White City Manufacturing Company, said corporation to be capitalized at $100,000, of which $50,000 would be preferred stock and $50,000 common stock. That a certain addition should be made to the plant by J. W. Ingle, and he was to receive $45,000 of the preferred stock in payment for the plant, and $30,000 of the common stock, to be paid for by the good will of the business. That petitioner was to subscribe for $5,000 of the preferred stock, for which he was to give his note, payable in 12 months from date, and was to receive $20,000 of the common stock in recognition of his long experience in the operation of such enterprises and his knowledge of markets and market conditions, etc. No cash was to be paid by either party for said common stock.

That it was further agreed that said Ingle should receive an annual salary of $5,000, and petitioner, who was to devote but half of his time to the enterprise, $2,500. Petitioner, likewise, was to get a selling agent to advance $10,000 against goods in process of manufacture, to be used in the operation of the business of the company.

That subsequent to this agreement said Ingle, upon the invitation . of petitioner, visited and examined the plants referred to, at Cedartown, and seemed highly pleased therewith. That on the return trip Ingle advised petitioner that he had in mind a mill and plant at Crawford, Ga., known as the Edwards mill and Edwards power plant, on which a friend of his, B. T. Comer, one of the defendants in this action, had an option; that it would take $135,000 to handle it, but that, if it could be handled, this property, together with that owned by the parties known as the White City Manufacturing Company, would be worth $250,000. It was suggested that the three plants combined could probably be bonded at $140,000, and that petitioner could probably secure a loan of from $30,000 to $35,000 from the selling agents, which would be used as operating capital.

That petitioner then suggested the employment of a competent architect and engineer to make a careful inventory and appraisement of the three plants, which suggestion was adopted, and the firm of Dallas-Roberts Company employed for this purpose. That the inventory and appraisement made by Mr. Dallas, of this firm, showed the value of the plants, exclusive of stock and merchandise on hand to be as follows:

| | | |
|---|---:|---:|
| White City Manufacturing Company | | $ 34,455.00 |
| Edwards mill | $146,313.20 | |
| Edwards power plant | 61,800.00 | $208,113.20 |

That thereafter, about April 11, 1917, petitioner, together with defendants B. T. Comer and J. W. Ingle, called upon L. F. Edwards, owner of the Edwards mill and Edwards power plant, and purchased the same; L. F. Edwards entering into a legal and binding option

257 F.—53

to sell to Benjamin T. Comer, J. W. Ingle, and George Beveridge the two properties, as particularly described therein, for the purchase price of $135,000, of which $20,000 was to be paid in cash, and the balance on or before July 11, 1917, the taxes for the year 1917 to be apportioned between the seller and purchasers.

That thereupon, and in lieu of the contract and agreement theretofore made between petitioner and defendant Ingle, above set out, a new agreement was entered into between him and the defendants Ingle and B. T. Comer to the following effect:

A new corporation was to be formed, to be known as the Crawford Cotton Mills, with a capital stock of $250,000 of which $100,000 was to be preferred and $150,000 common stock. Bonds were to be issued and sold on the combined plants to the amount of $140,000, of which $115,000 was to be used to pay the balance of the purchase price under the option above referred to; the cash payment of $20,000 being advances by Ingle and Comer, and for which they were to receive preferred stock. Ingle was to receive $40,000 of preferred stock in payment for his plant, previously operated as the White City Manufacturing Company, and also preferred stock to an amount equal to the inventory value of all merchandise and products on hand. The balance of the preferred stock was to be sold for cash or its equivalent.

The common stock was to be issued, one-third to each of the parties, to wit, George Beveridge, Benjamin T. Comer and J. W. Ingle, each of them to keep 150 shares thereof and transfer the rest to the corporation, to be held as treasury stock. For the 150 shares each of the common stock thus retained by said parties they were to execute each his notes to the corporation for $15,000, payable $5,000 per year.

Petitioner, Beveridge, was to be president of the corporation, defendant Ingle vice president, and defendant Comer treasurer, and each of said parties was to receive $10,000 per year for their services; it being contemplated that said agreement would extend over a period of three years and the notes given in payment for the common stock paid from the salaries thus agreed upon.

It is then alleged that this agreement was thoroughly understood in each and all of its details and consented to by each and all of said parties.

Following this is an allegation that petitioner had previously secured an option for certain looms, this being the only lot of looms available, and that "thereupon the contract was closed and the looms purchased for and in behalf of the benefit of said corporation." There is no statement as to the details of this purchase, the price paid, or by whom.

It is further alleged that application was made to the superior court of Oglethorpe county, Ga., by Comer, Ingle, and Beveridge, for a charter incorporating the Crawford Cotton Mills, which was granted on May 4, 1917.

That arrangements were made for the issuing and selling of the proposed bonds, and certain correspondence from Ingle to petitioner is set out as showing his (Ingle's) understanding of the agreement, and steps taken to carry out the same.

That on or about May 8, 1917, petitioner went to Athens for the purpose of being on hand at the organization of the Crawford Cotton Mills and furthering the interests of the enterprise. That while there, in conference with J. W. Ingle and B. T. Comer, they stated that they wanted petitioner to put up $15,000 in cash, at once; that they had changed their minds, and decided that petitioner would have to put up the $15,000 in cash by the next day, or they would not let him in on the deal, and he would have no further interest therein. That petitioner replied that he had not agreed to put up $15,000 in cash, that he was willing, able, and ready to comply with his agreement in every respect, that he would execute his notes to them that day, or any other time they might desire, and in addition would voluntarily advance one-third of the money necessary to pay the then incidental expenses, including the bill due Dallas-Roberts Company for the appraisement. That the conference then ended.

That he attempted to see them the next day, but without success, and he then wrote said Ingle, stating that he was at a loss to understand how they could have changed their minds regarding the agreement they had come to in connection with the proposed Crawford Cotton Mills; that he had learned that Ingle and Comer had said that he (Beveridge) had refused to go on with the matter, which was not correct; that he had told them he was ready to go ahead on the basis agreed upon, and asked for a conference, stating that he stood ready to fulfill his part of the terms and conditions agreed upon.

It is not stated whether the requested conference was granted or refused, but it is alleged that defendants declined to live up to their contract and to carry out the arrangement as agreed, and this without fault on the part of the petitioner.

It is then alleged that on the 10th day of May, 1917, defendants Ingle and Comer advised petitioner that they would hold a meeting at Crawford, Ga., on the 11th of May for the purpose of organizing the Crawford Cotton Mills, and invited him to be present, and that he attended. That at said meeting he was presented with a prepared form of subscription, obligating him to take 150 shares of preferred stock, for which $15,000 was to be paid, and 500 shares of common stock, for which $50,000 was to be paid, or a total of $65,000, all of which was to be paid upon the call of the board of directors. That being satisfied from his conversation with defendants Ingle and Comer on the day previous that their purpose was to get him out of the corporation, and they being a majority of the directors, to take action forcing him to pay at once the $65,000 if he so agreed and signed said subscription blank, he "did then and there advise said parties and those present that the proposed subscription did not contain the terms of the agreement between the parties; that he could not subscribe for said stock, agreeing to pay the said $65,000 on the call of the board of directors, but was willing to subscribe and pay for the stock, and then and there offered so to do, on the conditions and terms previously agreed upon between the parties." That said Comer and Ingle refused and declined to permit him to subscribe for the stock upon such terms and conditions, and that thereupon the stock

was subscribed for; J. W. Ingle subscribing for $80,000 of preferred stock and $75,000 of common stock, B. T. Comer for $20,000 of preferred and $74,000 of common stock, and H. T. O'Neal, a mere figurehead, subscribing for $1,000 of common stock.

That petitioner was then requested to transfer his interest, in the option above referred to, to the corporation for a consideration of $1. That he then and there offered to transfer the option to the corporation upon the terms and conditions previously agreed upon between the parties, but his offer was declined.

It is then charged, on information and belief, that during the life of said option, and for the purpose of defrauding and defeating the rights of petitioner, the defendants J. W. Ingle and B. T. Comer agreed with said L. F. Edwards to permit the option, for which they had already paid the $20,000, to expire if said Edwards would agree to give said Comer and Ingle a new option and agreement to sell said property at a price of $140,000, crediting the $20,000 already paid as a part payment thereof.

Petitioner then charges that—

"Said sale was consummated and the property transferred to the corporation, bonds issued thereon, all as previously contemplated and agreed, the enterprise launched, and is now in operation."

It is further alleged that the defendant corporation has failed and refused to pay his salary of $10,000 a year, that the other defendants herein have, without just cause, failed and refused, and continue to refuse, to comply with their contract and permit petitioner to take any part whatever in the operation, management, or control of said corporation, and that all of petitioner's rights were known to the defendant O'Neal at the time he subscribed for said stock. That J. W. Ingle is president and treasurer of said corporation, B. T. Comer is vice president and general manager, and H. T. O'Neal is secretary, these three forming the board of directors, and are named as defendants in their representative capacities as well as individually.

An amendment to this petition has been filed, in which the petitioner avers: That under and by virtue of the contract between him and the defendants, which is the basis of this suit, it was his duty to procure for the benefit of the defendants a competent and skillful selling agent, who, in addition to marketing the output of the mill, would advance to it the sum of $35,000 to be used in the operation of such mill. That in pursuance of such obligation he did, prior to May 11, 1917, go to Philadelphia and New York City, at his own individual expense, for the purpose only of procuring such agent, and that solely by reason of his efforts T. A. Shaw & Co., of the city of Chicago and New York, did agree to act as such selling agent and to advance the necessary sum of $35,000. That thereafter, notwithstanding the manner in which petitioner was treated by defendants, he still advised and requested the said T. A. Shaw & Co. to become selling agents of the mill, and that by reason thereof the said T. A. Shaw & Co. did become such agents, and did advance to it the sum of $35,000, or other large sum, as agreed for by petitioner, and defendants have ever since continuously accepted the benefit of petitioner's services

in that regard, and are still employing the said Shaw & Co. as selling agents.

Then, after alleging that "it is necessary for a court of equity to take charge of this case and the issues herein, and to decree petitioner's title and interest in and to 150 shares of the common stock of said corporation, to decree that the balance of the stock of said corporation be declared and held as treasury stock, other than 150 shares of common stock to B. T. Comer and 150 shares to J. W. Ingle, together with the amount of preferred stock issued to Ingle in payment of cash advanced by him and his plant, as hereinbefore described, and likewise the amount of preferred stock issued to B. T. Comer, for which he has paid cash or its equivalent," petitioner avers that his damages in and about the matters herein set forth are too vague and indefinite to be the cause of an action at law, but that they would amount to the sum of $50,000 or other large sum; also that petitioner is entitled to judgment against the Crawford Cotton Mills for the sum of $10,000 for salary for the year ending May 11, 1918.

The prayers of the petition are:

First, that process of subpœna be issued.

Second, that a temporary restraining order be granted, enjoining and restraining the defendants, and each of them, in the following particulars:

(a) From changing or altering the present status of the stock and assets of Crawford Cotton Mills, pending this litigation, except in the ordinary course of business.

(b) From making any transfer, sale, or incumbering the capital stock of said company, and

(c) From declaring or paying any dividends on the capital stock of said company.

Third, that upon a final hearing the following relief be granted:

(a) That the contract as herein set out between petitioner and defendants Comer and Ingle be required to be specifically performed by all and each of the parties hereto.

(b) That petitioner be decreed to be the owner of 150 shares of the common stock of said company upon the execution and payment of his notes as herein provided.

(c) That petitioner be declared to be the president of said corporation from the date of its organization until the 11th day of May, 1921, at a salary of $10,000 a year, as agreed.

(d) That said Comer be decreed to be the owner of such stock only as may have been subscribed and paid for by him as herein set out.

(e) That said Ingle be declared to be the owner of such stock in the corporation as agreed to be subscribed and paid for by him in accordance with the agreement as herein first contained.

(f) That petitioner have judgment against said Crawford Cotton Mills for the principal sum of $10,000 as salary for the year ending May 11, 1918.

(g) That, in the event specific performance cannot be decreed as herein prayed, petitioner have judgment against defendants herein, J. W. Ingle and B. T. Comer, in the sum of $50,000.

(h) That petitioner have such other and further relief as in good conscience and equity he may be entitled to.

There is a motion to dismiss this bill, and upon that the present hearing has been had.

This motion is on the ground:

First, that there is no equity in the petition, nor any ground for the intervention of equity set forth.

Second, because there is a misjoinder of parties and of causes of action, in that:

(a) The statements imposing liability, if any, upon the defendants J. W. Ingle, Ben T. Comer, and H. T. O'Neal are entirely disconnected from the defendant Crawford Cotton Mills, in that it appears from the averments of the petition that the agreements made by the defendants J. W. Ingle and Ben T. Comer (if any such were in fact made) were made and entered into by them in their individual capacities, and that the said defendants had at the time of entering said agreements no authority to act in behalf of the defendant Crawford Cotton Mills.

(b) The defendant the Crawford Cotton Mills, as an artificial person created by law, is an entirely distinct entity from the defendants Ingle, Comer, and O'Neal, notwithstanding said defendants individually might own all of the capital stock or shares in the Crawford Cotton Mills, and the Crawford Cotton Mills cannot be bound by the contracts or agreements of others than those duly authorized to contract in its behalf.

(c) There being no liability alleged as against the defendant the Crawford Cotton Mills as touching the matters and things wherein petitioner alleges that the defendants Ingle and Comer and O'Neal have endamaged him $50,000, or other large sum, and no joint liability as against said individual defendants for the alleged $10,000 claimed to be due to the petitioner by the defendant Crawford Cotton Mills as salary, there is no community of action or cause of action between these distinct and separate parties, the one artificial and the other three natural persons, and the cause for misjoinder should be dismissed.

Third, defendants also move to dismiss plaintiff's petition upon the ground that the same is multifarious, and, if petitioner has any cause of action against the defendants Ingle and Comer, he has an adequate remedy at law.

There is no allegation whatever in the petition that the contract said to have been entered into by Ingle, Comer, and the petitioner as a substitute for a former contract existing between Ingle and the petitioner was in writing, or any memorandum of the same kept in writing. If the allegations of the petitioner with reference to the purchase of looms must be construed such "part performance of the contract as would render it a fraud of the party refusing to comply with the contract," or if the alleged action of petitioner in obtaining a selling agent to sell goods for the corporation and lend them money could be construed in the same way, either separately or combined, it could only render what is alleged to have transpired between Ingle

and Comer, on the one hand, and the petitioner, on the other, a contract, and relieved by what was done by Beveridge from the operation of the statute of frauds on the matter, and make it a binding contract. The right of petitioner, then, giving the allegations of his petition the strongest view in his favor, would be a proceeding for a breach of contract, for which there would be, of course, an adequate remedy at law ordinarily. The difficulty about this case is that petitioner sets out in his petition "that his damages in and about the matters herein set forth are too vague and indefinite to be the cause of an action at law," so that would seem to be in the way of a transfer of this case to the law docket, that it might be tried as an action at law for damages. Where the petitioner himself avers that his damages are too indefinite to be recovered at law, it would appear useless to send his case to the law docket.

[1] In addition to the foregoing, I think the bill is clearly multifarious. The causes of action against Ingle and Comer are so intermingled with whatever cause of action he may have, if any, against Crawford Cotton Mills, that the suit cannot be maintained for that reason. The damages sought against the Crawford Cotton Mills, and the rights against the Crawford Cotton Mills, if any are shown, are distinct and separate from the damages which would seem to be the basis of recovery against Ingle and Comer; that is, for breach of contract. The Crawford Cotton Mills is, of course, a distinct legal entity from Ingle and Comer individually, and, construed in the light in which this petition presents them, they cannot be joined in the same action.

[2] The prayer is that the contract between Ingle and Comer and petitioner be required to be specifically performed by all and each of the parties hereto. That prayer would include both Ingle and Comer and the Crawford Cotton Mills. Then there is the alternative prayer that, in the event specific performance cannot be decreed, petitioner have judgment against the defendants herein, Ingle and Comer, for the sum of $50,000. These prayers, considered separately and in the alternative, as they are set out, cannot, of course, be entertained. It would be impossible, under the facts stated, to decree specific performance of the contract, and the right to damages, if it exists at all, is a right in a court of law.

[3] The facts set out in this bill do not appeal to me as facts which justify any interference on the part of a court of equity at all. The petitioner, as shown in the bill, declined to take stock in the corporation which was to be organized, or to sign any subscription to stock. He relied upon what he says was an agreement between them, which, not being stated to have been in writing, must be considered as simply an oral agreement, that, by reason of certain experience he had as a man familiar with and an expert in weaving, he should become interested largely in the Crawford Cotton Mills without subscribing for a single dollar of stock. He did offer to give notes, which were to be paid out of a salary which he says he was to receive, which seems to have been a large salary, considering the size of the mill. The most that can be said from the bill that he did was with reference to the

purchase of looms and to the securing of a sales agent, which is so indefinitely set out as to be not entitled to consideration here.

I do not think a case is made which, looking at it from any possible angle, justifies any relief. Consequently the motion to dismiss the bill will be sustained, and a decree to that effect may be taken.